IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
_____

| | |
|---|---|
| ALBERT & ANDREA FOWLER | ) |
| 8725 Soapweed Road | ) |
| Calhan, CO 80808 | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| BANK OF AMERICA BANK, CORPORATION. | ) |
| Corporate Center 100 | ) |
| 100 North Tyron Street | ) |
| Charlotte, North Carolina 28255 | ) |
| | ) |
| BANK OF AMERICA, N.A. | ) |
| 100 North Tyron Street | ) |
| Charlotte, North Carolina 28255 | ) |
| | ) |
| BAC HOME LOANS SERVICING, L.P.   f/k/a | ) |
| COUNTRYWIDE HOME LOANS INC. | ) |
| 4500 Park Grenada | ) |
| Calabasas, CA 91302 | ) |
| | ) |
|     Defendants. | ) |

_____

**COMPLAINT**
(*with jury request*)
_____

    The Plaintiffs Albert and Andrea Fowler, by their undersigned attorney complain

against the Defendants as follows:

## I.      INTRODUCTION

1.    This is a civil action jointly filed by the Plaintiff's against the Defendants for

misconduct  related to servicing the Plaintiff's single-family mortgage.

2.      As identified below, Defendant's misconduct is proscribed by the Real Estate

Settlement Procedures Act "RESPA," 12 U.S.C. § 2601 et. seq., the Truth in Lending

Act, 15 U.S.C. § 1640 et. seq. and various state statutes.


II.      PARTIES

3.      This action is brought by the Plaintiff's who are mortgagors of that certain

property which street address is:

8725 Soapweed Road
Calhan, CO 80808

4.      At all times relevant, A.J. Fowler was an airline pilot, later retiring, and Andrea

Fowler was/is a church receptionist both of whom are unsophisticated in financial matters

and without bargaining power or prowess.

5.      At all relevant times, Plaintiff's mortgage loan is/was federally related/regulated

as this term is defined in 12 C.F.R. 1024.2(b) ("Reg X").

6.      This property ('subject property') is Plaintiffs principal residence.

7.      Defendant Bank of America Corporation ('BOA') is a diversified financial

services company and a bank holding company. It is a Delaware corporation

headquartered in Charlotte, North Carolina. Defendant BAC Home Loans Servicing, L.P.

is/was a servicing company formerly known as Countrywide Home Loan Servicing, L.P.

It was a Texas limited partnership with its principal place of business in Plano, Texas. It

was, for a time a wholly owned subsidiary of Bank of America N.A. Countrywide

Financial Corporation is/was a financial services company headquartered in Calabasas,

California with three of its subsidiaries, Countrywide Home Loans, Inc., Countrywide

Mortgage Ventures, L.L.C. and Countrywide Bank, FSB (collectively, with Countrywide

Financial Corporation, "Countrywide"). On April 23, 2009, the Office of the Comptroller of the Currency approved Countrywide Bank, FSB's ("CWB") request to convert its charter back to that of a national bank and the request of Bank of America N.A. to then immediately acquire CWB by merger. These transactions were executed on April 27, 2009, as a result of which CWB ceased to exist. Bank of America N.A. was the surviving institution resulting from this merger. Thus Bank of America N.A. is the successor in interest to CWB.

8.      BAC is the wholly owned subsidiary of BOA established to service its mortgage loans. Collectively, the defendants BAC and BOA are identified in this paragraph and may be identified throughout this complaint collectively as "BOA" or the "Defendants."

9.      The business of BOA, includes the origination and servicing of loans as this term is defined in 12 U.S.C. § 2605(i)(2).

10.     At various relevant times, the mortgage/note for the subject property is or was owned, held or serviced by various entities identified in the foregoing paragraphs.


III.      JURISDICTION & VENUE

11.     This Court has personal jurisdiction over the Defendants because they have transacted business in Colorado, and because they have committed acts proscribed by federal statute in this District.

12.     This Court has subject mater jurisdiction, pursuant to 28 U.S.C. § 1331, because this action arises under the laws of the United States.

13.     This Court has supplemental jurisdiction over state law claims based upon 28 U.S.C. § 1367.

14.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2).


## IV.     BACKGROUND

### Relevant Federal Law

*The Real Estate Settlement Procedures Act "RESPA," 12 U.S.C. § 2601 (et. seq.) and the Truth in Lending Act "TILA." 15 U.S.C. § 1640 (et. seq.)*

15.     RESPA. Congress found that significant reforms in the real estate settlement process were needed to insure that consumers were provided with greater and timelier information to curb certain abusive practices. RESPA mandates that lenders or loan servicers must respond to consumers who have questions about their accounts and must make corrections when appropriate. When a consumer raises a written question concerning their account, including questions related to the Home Affordable Modification Program and escrow enquiries, this triggers certain obligations on the part of the bank or servicer. A consumer's request must be acknowledged within 5 days and a substantive response or action must be taken within 30 days ('post' 1/10/14 – excluding legal public holidays, Saturdays and Sundays). The earlier version of RESPA required acknowledgment within 20 days and a substantive response within 60 days ('pre' 1/10/14).

16.     TILA. The Truth in Lending Act was designed to promote the informed use of consumer credit by requiring disclosures about terms, note ownership and cost to standardize the manner in which information associated with borrowing is disclosed.

17.     The purposes of RESPA and TILA are achieved through awarding: actual

damages; pecuniary damages and additional damages, as the court may allow including statutory penalties, costs and attorneys fees.

Relevant State Law

*(the 'Colorado Real Estate Settlement Procedures Act') C.R.S. § 38-40-101 et.seq., the Colorado Consumer Protection Act "CCPA," C.R.S. 6-1-101 (et. seq.)*

18.     C.R.S. § 38-40-101 et. seq. This statute is Colorado's response to RESPA. The Legislature found the need to reform the real estate settlement process to insure that consumers were provided with greater and timelier information to curb certain abusive practices. Among other provisions C.R.S. § 38-40-101 et. seq. mandates that lenders or loan servicers respond to consumers who have questions about their accounts and must respond with readily available information. When a consumer raises a written question concerning their account, the servicer must respond within 20 days.

19.     The purposes of C.R.S. § 38-40-101 et. seq. are achieved through awards including: actual damages, costs and attorneys fees and civil penalties of $1,000.00 per violation.

20.     CCPA. The Colorado Consumer Protection Act is a remedial statute intended to deter and punish patterns of unfair and deceptive trade practices committed by businesses in dealing with the public. Deceptive trade practices and predicate offenses listed in the CCPA are in addition to, and do not limit, the types of unfair trade practices actionable at common law or under other statutes. Violations of RESPA, TILA and C.R.S. § 38-40-101 et. seq. provide an independent basis and suitable predicate offense for unfair and deceptive trade practices ('UDAP') claims. The purpose of the CCPA is achieved through injunctions and civil penalties such as treble damages and attorney's fees. The

availability of the greater of: actual damages; five hundred dollars, or; treble damages. In the case of any successful action and attorney's fees and costs as determined by the court.

## V.   FACTUAL ALLEGATIONS

21.    The Defendants are engaged in trade or commerce in Colorado and the United States and are subject to the relevant federal and state laws.

22.    The Defendants own and/or service or have owned and/or serviced [as this term is defined by 12 U.S.C. § 2605(i)(3)] the home mortgage loan/note secured by the subject property.

23.    Between 3/09 and 10/14, Plaintiffs loan became delinquent and the subject of foreclosure action initiated by BOA.

24.    Over a period of years, Plaintiffs owing to Defendant's conduct, Plaintiff's submitted multiple Home Affordable Loan Program ('HAMP') applications, each of which required extensive written follow-up.

Count One
Violation of RESPA
(Real Estate Settlement Procedures Act)
12 U.S.C. 2605 et.seq.

25.    The allegations in paragraphs 1- 24 are incorporated herein by reference.

26.    Between August of 2012 to the present, Plaintiffs sent Defendants more than 867 qualified written requests ('QWR's) notices of error ('NOE's') and/or requests for information ('RFI's).  (Exhibits 01-2025 through 50-SHON-06 #3).

27.    Each of Plaintiff's mailings qualified as a QWR, NOE and/or RFI under RESPA because each:

   a)      was in writing;

b) included or allowed the Defendants to identify the name and address of the borrower;

c) each included a statement of the reasons for belief of the Plaintiffs, to the extent applicable, to identify an error; request information related to the servicing of the loan, or; ask a question related to the servicing of the loan.

d) provided sufficient detail to adequately identify the Plaintiffs as 'borrowers'/'customers' and/or 'consumers' of the Defendant's services, and;

e) provided sufficient detail regarding the NOE, QWR and/or RFI.

28. Each correspondence contained a unique reference number which Plaintiff's requested Defendants to reference within their responses.

29. Plaintiff's correspondence should have triggered BOA's duty to respond because it included, or otherwise enabled BOA to identify, the Plaintiffs and their account along with reasons Plaintiffs believe(d) that their account is/was in error and/or provide(d) sufficient detail to BOA regarding other information related to the servicing of their loan. See 12 U.S.C. § 2605(e)(1)(B).

30. All of Plaintiff's correspondence related to the servicing of their account as the statute defines 'servicing.' See 12 U.S.C. § 2605(i)(3).

31. Of the 867 separate mailings, BOA acknowledged receipt of 86 pieces of correspondence by 'form letter' of which *none* were acknowledged within the 'pre' or 'post' 1/10/14' RESPA statutory time frames required for initial and substantive responses.

32. In the course of its conduct, management and oversight of servicing Plaintiff's

loan, the Defendants failed to respond or failed to timely respond to all but one of Plaintiff's QWR's', NOE,'s and RFI's under:

    a)      the earlier version of RESPA which required the bank/servicer to acknowledge receipt of a consumers QWR's within 20 days of receipt followed by a substantive response after 60 days, and;

    b)      the current version of RESPA which requires a bank/servicer to acknowledge receipt of a consumers QWR, NOE and/or RFI within 5 days of receipt followed by a substantive response after 30 days.

33.    Only one response mentioned Plaintiff's correspondence unique reference tracking number acknowledged Plaintiff's inquiry within 5 days, and; provided a substantive response within 30 days (Exhibit 39-DTFC-03).

34.    The QWR's, NOE's and 'RFI's sent by Plaintiffs conformed to the respective statutory, regulatory and case law definitions for each.

35.    Initially, Plaintiffs sent their QWR's to addresses not designated for receipt of QWR's. Upon becoming aware of specific addresses designated for receipt of QWR's, NOE's and 'RFI's, Plaintiffs copied and re-sent the same correspondence to addresses designated by BOA or its agents for receipt of this type of correspondence. (Exhibits 01-2025 #2 through 50-SHON-06 #2).

36.    When BOA did not respond, Plaintiff re-sent these QWR's, NOE's & RFI's a *third* time to the addresses designated by the Defendant's for receipt of this type of correspondence. The Defendants designated the following addresses:

Bank of America, N.A.
Customer Service Correspondence
CA6-919-01-41
P.O. Box 5170
Simi Valley, CA 93062-5170

Bank of America, N.A.
P.O. Box 942019
Simi Valley, CA 93094-2019

The Castle Law Group. L.L.C.
999 18th Street, Suite 2201
Denver, CO 80202

Bank of America, N.A.
Attn: Notice of Error & Request for Information
P.O. Box 942019
Simi Valley, CA 93094-2019

(supported by Exhibits C17, C71, C114 and C174).

37.    Defendant's non-feasance represents a pattern and practice of non-compliance with the statute.

38.    12 U.S.C. § 2506 authorizes actual damages, attorneys fees, costs and penalties for each such failure to comply with statute an amount equal to the sum of:

a)    actual damages;

b)    in the case of a pattern or practice of non-compliance with requirements the statute, $2,000.00 per violation.

39.    As a result of Defendant's near complete dismissal of Plaintiffs' written inquiries, Plaintiffs suffered the following actual damages:

a)    inaccurate credit reporting;

b)    attorneys fees (on-going);

c)    court costs (on-going);

d)    office supplies ($570.84);

e)      postage mailing – each item was mailed at lease twice to an address

designated for receipt of NOE's, QWR's and RFI's ($1,064.50);

f)      printing ($11,479.52);

g)      processing - filing, scanning, PDF conversion ($18,978.14);

h)      professional administrative time ($230,894.72 from 6/12 to present);

i)      travel to post office, Fed Ex, Greenwood Village Library, various

Monument meeting venues, El Paso County Clerks Office and attorneys

office - using IRS and AAA mileage rates ($3,422.57);

(See itemization of damages in Exhibit Volume 1 "damages file" and Exhibits

MD – 1; A – 1; OS1 – OS23; PO1 – PO31; PR1; PRO1 - PRO12; PAT1 – PAT56; TR1 –

TR16).

40.     All of the foregoing actual damages are causally and proximately linked to BOA's

failure to comply with RESPA requirements.

41.     Plaintiff's damages would either not have been incurred or would have been

greatly reduced if Defendants had responded to at least the first of each of Plaintiff's

written enquiries.

42.     The non-responses and/or untimely responses by BOA to Plaintiffs'

correspondence form a "pattern or practice of non-compliance" under RESPA.

43.     By statute, Plaintiff is entitled to $2,000.00 for each un-answered written request

which was sent more than once to an address designated by BOA for receipt of QWR's,

NOE's and RFI's  - 867 inquiries sent to addresses designated for receipt of such mail.

(See Exhibit Volumes VII & VIII).

Count Two
Violation of TILA
(Truth in Lending Act)
15 U.S.C. 1640 et.seq.

44.     The allegations in paragraphs 1- 43 are incorporated herein by reference.

45.     In addition to servicing the loan, BOA is a successor in interest by merger to CWB, the originator of the note and mortgage and therefore stands in its shoes as the originator.

46.     Due to Defendant's pattern failure to respond to Plaintiff's myriad written RESPA enquiries, Plaintiffs reasonably questioned whether BOA even owned the note. On more than one occasion by telephone, BOA could not confirm existence of the Note or underlying mortgage. In multiple telephone conversations, BOA representatives freely admitted they had no record of ownership of the note or mortgage.

47.     This information caused Plaintiff's to make repeated requests in attempts to identify actual ownership of the Note and Mortgage,

48.     Plaintiff sent 12 requests to BOA asking for identification/clarification of the mortgage loan/note holder/owner. [Exhibits 04-1057 #1 dd 10/26/13 & 04-1057 #2 dd 6/9/14; 09-1057 #1, dd 10/7/13 &  09-1057 #2, dd 5/27/14; 13-1013 #1, dd 10/14/13 & 13-1013 #2, dd 5/28/14; 27-1013 #1 dd 10/9/13 & 27-1013 #2 dd 6/1/14; 40-1035 #1, dd 10/25/13 & 40-1035 #2, dd 5/21/14; 48-1015 #1, dd 10/25/13 & 48-1015 #1, dd 5/30/14).

49.     BOA was required to respond to these requests pursuant to TILA (15 U.S.C. 1641(f)(2)].

50.     BOA never responded; did not substantively respond, or; did not respond within the statutory time.

51.     Each request for identification was submitted at least twice (See Exhibits

followed by "#2" – exhibits submitted three times are followed by "#3').

52.     BOA failed to respond to any request for identification/clarification of the mortgage loan/note holder/owner.

53.     Plaintiff's incurred, suffered, and are entitled to, actual damages (by virtue of paying additional costs in the form of postage (each TILA request mailed at least twice), office supplies, travel and administrative time) costs they would not otherwise have incurred if they did not otherwise have to mail each request more than once. (Exhibits MD – 1; A – 1; OS1 – OS23; PO1 – PO31; PR1; PRO1 - PRO12; TC1 – TC56; TR1 – TR16).

54.     Plaintiff is also entitled to attorneys fees and statutory damages of $4000.00/request under 15 U.S.C. § 1640((a)(2)(iv) for each of the 12 requests made.

55.     Defendant's non-feasance represents a pattern and practice of non-compliance with the statute.

56.     All of the foregoing actual damages are causally and proximately linked to BOA's failure to comply with TILA requirements.

Count Three<br>
Violation of Colorado Statute<br>
C.R.S. 38- 40 -101 et. seq.

57.     The allegations in paragraphs 1 - 56 are incorporated herein by reference.

58.     The Defendants regularly engage in the collection of payments on mortgages and deeds of trust for owners of evidences of debt secured by mortgages or deeds of trust and are "servicers" as this term is defined by C.R.S. § 38-40-103.5(2).

59.     The Defendants were/are obligated to promptly perform all duties imposed by Colorado law upon servicers of evidences of debt, mortgages, or deeds of trust creating or securing the indebtedness.

60.    The Defendants failed to perform their statutory duties under C.R.S. § 38-40-103 by failing to respond to 867 QWR's, NOE's and RFI's.

61.    The Plaintiffs sought to resolve these violations in a reasonable, timely and good faith manner.

62.    The Defendant's were afforded repeated opportunities to respond to Plaintiff's written requests in a timely manner.

63.    Defendant's non-feasance represents a pattern and practice of non-compliance with the statute.

64.    The Plaintiff's were aggrieved by Defendant's violations of C.R.S. §§ 38-40-103 & 103.5.

65.    Defendants refused to remedy its violations in a reasonable, timely and good faith manner, despite them being made aware of these violations and given ample opportunity to correct.

66.     C.R.S. § 38-40-104 authorizes damages including attorneys fees, costs and penalties for each such failure to comply with statute an amount equal to the sum of:

a)     actual damages;

b)     in the case of a pattern or practice of non-compliance with requirements the statute, $1,000.00 per violation. (See Exhibit Volumes VII & VIII).

67.    As a result of Defendant's violations of C.R.S. § 38-40-101 et. seq., Plaintiffs suffered the following actual damages:

a)     inaccurate credit reporting;

b)     attorneys fees (on-going);

c)     court costs (on-going);

d)     office supplies ($570.84);

e) postage mailing – each item was mailed at lease twice to an address designated for receipt of NOE's, QWR's and RFI's ($1,064.50);

f) printing ($11,479.52);

g) processing - filing, scanning, PDF conversion ($18,978.14);

h) professional administrative time ($230,894.72 from 6/12 to present);

i) travel to post office, Fed Ex, Greenwood Village Library, Monument meeting venues and attorneys office - using IRS and AAA mileage rates ($3,422.57);

(See itemization in Exhibit Volume 1 "damages file" and Exhibits MD – 1; A – 1; OS1 – OS23; PO1 – PO31; PR1; PRO1 - PRO12; PAT1 – PAT56; TR1 – TR16).

68.   All of the foregoing actual damages are causally and proximately linked to BOA's failure to comply with RESPA requirements.

69.   The non-responses and/or untimely responses by BOA to Plaintiffs' correspondence  form a "pattern or practice of non-compliance" under RESPA.

70.   By statute, Plaintiff is entitled to $1,000.00 for each violation under the statute (867 violations see Exhibit Volumes VII & VIII).

71.   As a result of Defendant's violations, Plaintiffs suffered actual damages, attorneys fees and court costs.

72.   Plaintiff's damages would either not have been incurred or would have been greatly reduced if Defendants had obeyed state statute.

73.   All of the foregoing actual damages are causally and proximately linked to Defendant's  failure to comply with requirements of C.R.S. § 38-40-101 et. seq.

Count Four
Promissory Estoppel / Fraud in the Inducement

14

74.     The allegations in paragraphs 1 - 73 are incorporated herein by reference.

75.     For its own benefit, BOA mailed Plaintiff's false notification promising that they would be enrolled automatically in a 'short sale' program in which Plaintiffs would be eligible to receive $5,000.00 to $30,000.00 in relocation assistance and promising them that they would owe nothing more on their mortgage with the sale of the property. In this same correspondence, BOA stated that if Plaintiff's wished to participate, they should "do nothing." Letter d 5/8/12, Exhibit C-46.

76.     In reasonable reliance, BOA's made a false statement that induced reliance on the part of Plaintiff's.

77.     Plaintiff's did nothing as instructed and BOA initiated foreclosure.

78.     Thereafter BOA initiated foreclosure.

79.     Plaintiff's reliance was justified.

80.     Plaintiff's damage is causally linked, in part, to this letter.

81.     The Plaintiff's reliance on Defendant's inducement caused them pecuniary damage and injury in that the subsequent actions of the Defendants caused Plaintiffs to take immediate, emergency action, hire an attorney and spend time and money they would not otherwise have undertaken had Defendant's honored the offer made in their Letter dd 5/8/12.

Count Five<br>
Violation of the CCPA<br>
(Colorado Consumer Protection Act)<br>
C.R.S. 6 §-1-101 et. seq.

82.     The allegations in paragraphs 1 - 81 are incorporated herein by reference.

83.     BOA's committed multiple predicate offenses under the CCPA including:

a)      neglect of its statutory duties under RESPA, TILA and C.R.S. 38- 40 -101

et. seq., as described above and;

b)      inducing Plaintiff's further delinquency by mailing Plaintiff's false

notification of their ability to participate in a 'short sale' - that they would

be enrolled automatically in the program and be eligible to receive

$5,000.00 to $30,000.00 in relocation assistance - that they would

owe nothing more on their mortgage with the sale of the property - that if

Plaintiff's wished to participate, they should "do nothing." Exhibit C-46.

84.    By belief and knowledge, this same form letter has been sent to thousands of members of the consuming public with similar BOA intent and result.

85.    BOA's conduct occurred during the ordinary course of its business.

86.    BOA conduct is part of a pattern and practice of 'bad faith'/'deceptive trade practice' conduct which has significantly impacted the Plaintiff and thousands of other similarly situated customers.

87.    By belief or knowledge, BOA's conduct is or will impact thousands of other potential consumers of BOA's services.

88.    Evidence of BOA's harm, significant public impact and similar behavior on the part of BOA also includes:

a)      BOA's website, BankofAmerica.com which solicits written

correspondence on its public website, a website designed for a

nationwide audience;

16

b)   Local and national BOA consumers have been touched by similar

behavior. A sampling of more than 13,000 cases brought against

BOA found in the public record reveals similar conduct in the

following cases:

- *Duffin v. BOA*, District Court Case No. 2012CV1270 (Jeff. Cnty CO., 2012);

- *Benner v. BOA/BAC*, U.S. District Court Case No. 11-6574 (E.D. Pa., 2013);

- *Stroman v. BOA/BAC*, U.S. District Court Case No. 1-10-CV-4080-AT (N.D. Ga., 2012);

- *Davis v. BOA/BAC*, U.S. District Court Case No. 2:12-CV-01632-RDP (S.D. Al. 2014);

- *Rourke v. BOA*, U.S. District Court Case No. 4:12-CV-42 (CDL), (Col.Div. GA, 2012);

- *Collins v. BOA/BAC*, U.S. District Court Case No. 2:12-CV-3721-LSC, (S.D. Al., 2013);

- *Hall v. BOA/BAC*, U.S. District Court Case No. 2:12-CV-3720-LSC (S.D. Al. 2013);

- *Greene v. BOA/BAC*, U.S. District Court Case No. 1:13-CV-00937-JAP/KBM, (Dist. NM, 2014);

- *Henson v. BOA et.al.*, U.S. District Court Case No. 12-CV-00098-CMA-CBS, (Dist. CO, 2013).

c.   BOA's conduct has a *per se* significant public impact because it

violates statutes that have specific legislative declarations of

public interest impact (see introductory statements from

RESPA at 12 U.S.C. 2601(a) and TILA at 15 U.S.C. 1601(a)).

d.	As evidenced above, BOA's conduct has been repetitive, widespread and has further 'potential for repetition'.

e.	The public impact requirement is met on additional levels. BOA is a multinational banking and financial services corporation which is the second-largest bank holding company in the United States by assets. It serves clients in more than 150 countries and has a relationship with 99% of the U.S. Fortune 500 companies and 83% of the Fortune Global 500. BOA is a member of the Federal Deposit Insurance Corporation (FDIC) and a component of both the S&P 500 Index and the Dow Jones Industrial Average. As of 2010, BOA was the fifth-largest company in the United States by total revenue and in 2010, Forbes listed Bank of America as the 3rd biggest company in the world. BOA is the world's largest wealth management corporation and a holds 12.2% of all bank deposits in the United States (as of August 2009). It is in the business of credit. Anything it does related to the mortgages it originates and services is done according to corporate policy using form letters and mass mailings affecting large swaths of the consuming public.

f.	On, or about, 4/4/12 BOA, through its Chief Accounting Officer Neil A. Cotty, signed a Consent Judgment with the United States of America and the Attorneys General of 49 states, including Colorado, in which it acknowledged behavior similar to that described above

and in which it agreed to various remedies including monetary

compensation and revision of its business practices as largely

described in Exhibit A made a part of the Consent Judgment.

89.  By reason of BOA's conduct, Plaintiffs have suffered injury in fact and damage to their legally protected interests including the damages listed in the foregoing narrative, subversion of clear statutory procedures designed to protect consumers, emotional distress and large investments of time and money.

90.  Each instance of wrongful conduct described in this Complaint and attributed to BOA is predicate act under C.R.S. 6-1-105(3).

## Count Six
### Emotional Distress

91.  The allegations in paragraphs 1 - 91 are incorporated herein by reference.

92.  Plaintiff's suffered emotional distress each time they dealt with BOA.

93.  As the Plaintiff's faced eminent foreclosure, their emotional distress escalated and was made more severe by each of BOA's noncompliant failures and refusals to provide Plaintiff with:

    (a)    the required acknowledgment;

    (b)    the requested information, and;

    (c)    the required written explanation or clarifications.

94.  BOA's failure to honor its offer of a short sale or to answer Plaintiff's statutory requests caused Plaintiff's to suffer frustration and angst, because they were unable to obtain information, including payment information, from BOA to make determinations about disputed amounts, amounts owing, late charges escrow fees and penalties during Plaintiff's efforts to obtain a loan modification based upon accurate arrearages.

95.     Plaintiff's were left with uncertainty, anger, fear, sadness, insomnia and nightmares because without the information, Plaintiff was left in a state of uncertainty and at an informational disadvantage, which contributed to Plaintiffs submitting multiple Loan Modification Applications to BOA in futility.

96.     Plaintiff's emotional distress escalated further and was made even more severe by BOA's unlawful collection actions including:

    a)      calling Plaintiff's at any time during the night or day;

    b)      contacting Plaintiff's at a time when BOA records should have revealed Plaintiff's were represented by an attorney;

    c)      swearing at Plaintiff's over the phone and hanging up on them.

97.     BOA's unlawful conduct caused Plaintiff to experience highly unpleasant mental reactions, including fright and horror (from nightmares), grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, depression, embarrassment, worry, loss of concentration, depression, stomach ailments, weight gain, nausea and social withdrawal, sadness, anger, insomnia and anxiety over what Plaintiff's believed was an unjustified increase in the amount of the debt attributed to their mortgage obligation, penalties and other errors and assessments connected with the servicing of their mortgage.

98.     Plaintiff's reactions were so extreme long suffering that no reasonable person of ordinary sensibilities could be expected to tolerate or endure them.

99.     The emotional toll suffered by Plaintiff increased with each failure and refusal to comply and/or with each violation of law by Defendants.

100.    Plaintiff's have suffered non-pecuniary damage, injuries and losses.

101.   The plain language of RESPA also allows Plaintiff's to recover non-pecuniary damage, injuries and losses for emotional distress.

102.   BOA is the proximate cause behind Plaintiff's symptoms during the relevant time period.

103.   The Defendants engaged in extreme and outrageous conduct attended by recklessness and extreme indifference toward the feelings and needs of the Plaintiffs.

104.   The Defendants did so recklessly, with complete disregard and/or with the intent of causing the Plaintiffs severe emotional distress.

105.   The extreme and outrageous character of Defendant's conduct was enhanced from its knowledge that Plaintiffs were peculiarly susceptible to emotional distress because of their precarious housing situation.

106.   Defendants' knowledge of all the facts in this matter arouses a reasonable person's resentment against the Defendants and would lead reasonable members of the community to conclude that Defendant's conduct was extreme and outrageous.

107.   The Defendants' feasance/mal-feasance/non-feasance was so outrageous in character, and so extreme in degree and over such a long period of time that a reasonable member of this community would regard the conduct as atrocious, going beyond all possible bounds of decency and utterly intolerable in a civilized community.

108.   The Defendants' conduct was the cause of the Plaintiff's severe emotional distress, injury and non-pecuniary damage.

109.   Plaintiffs have suffered damage and injury.

## VI.    PRAYER FOR DAMAGES & REQUEST FOR JURY

110.    As a result of the Defendants conduct, Plaintiffs have suffered actual damages pecuniary damages, consequential damages and non-pecuniary damages identified as follows:

a)      statutory damages under RESPA [$2,000/violation x 867 violations = $1,734,000];

b)      statutory damages under C.R.S. § 38-40-101 et. seq.  [$1,000/violation x 867 violations = $867,000];

c)      statutory damages under TILA [$4,000/violation x 12 violations = $48,000];

d)      damages for promissory estoppel/fraudulent inducement: $346,000 (representing approximate loan balance);

e)      correction of inaccurate credit reporting;

f)      attorneys fees (on-going);

g)      court costs (on-going);

h)      office supplies ($570.84);

i)      postage mailing – each item was mailed at lease twice to an address designated for receipt of NOE's, QWR's and RFI's ($1,064.50);

j)      printing ($11,479.52);

k)      processing - filing, scanning, PDF conversion ($18,978.14);

l)      professional administrative time ($230,894.72 from 6/12 to present);

m)      travel to post office, Fed Ex, Greenwood Village Library, various Monument meeting venues, El Paso County Clerk's office and attorneys

office - using IRS and AAA mileage rates ($3,422.57);

n)      statutory damages pursuant to C.R.S. 6 §-1-101 et. seq. (treble

actual damages);

o)      attorneys fees and costs as granted by any statute(s) referenced herein

and/or provided equitably by the Court;

p)      damages for emotional distress: ($6,000,000.00 - $1,000,000/year x 6

years);

q)      statutory interest.

(See itemization of damages in Exhibit Volume 1 "damages file" and Exhibits MD – 1; A

– 1; OS1 – OS23; PO1 – PO31; PR1; PRO1 - PRO12; PAT1 – PAT56; TR1 – TR16).

111.    Plaintiffs request that this matter be heard before a jury of six.

dd:      7/21/15                      BULLOCK LAW L.L.C.

*A signed copy of the foregoing is on file and available for inspection at the offices of BULLOCK LAW L.L.C. upon request.*

By:     s/:Tim Bullock
        *Tim Bullock #35239*
        827 Good Hope Drive
        Castle Rock, CO 80108

        (p) 888.682.3788
        (f)303.495.2198

        Bullocklaw@Gmail.com