## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:15-cv-01797-MJW

A.J. & ANDREA FOWLER,

      Plaintiffs,

v.

BANK OF AMERICA BANK CORPORATION,
BANK OF AMERICA, N.A.,
BAC HOME LOANS SERVICING, L.P. f/k/a
COUNTRYWIDE HOME LOANS INC.

      Defendants.

_____

## MOTION TO DISMISS
_____

Pursuant to Fed. R. Civ. P. 12(b)(6), defendants Bank of America Corporation (erroneously sued as "Bank of America Bank Corporation") ("BAC") and Bank of America, N.A. (individually and as successor by merger to BAC Home Loans Servicing, LP) (erroneously sued as "BAC Home Loans Servicing, LP f/k/a/ Countrywide Home Loans, Inc.") ("BANA") (together, "Defendants") respectfully submit this Motion to Dismiss ("Motion") and in support state as follows:

**D.C.COLO.LCivR 7.1(a) Certification**.  The undersigned certifies that he has conferred with counsel for plaintiffs A.J. and Andrea Fowler, who advised that the Fowlers oppose the relief requested herein.

## INTRODUCTION

After receiving a loan modification that reduced the unpaid balance on their mortgage loan by more than half a million dollars, plaintiffs A.J. and Andrea Fowler now seek to recover

even more money from Defendants based on so-called "servicing errors" the Fowlers claim

BANA committed in connection with their loan.  But the Fowlers' Complaint does not identify a

single alleged error committed in the actual servicing of their loan.  Instead, the Fowlers

complain that BANA failed to timely respond to each and every one of the Fowlers' <u>867</u> serial

mailings, most of which the Fowlers admit were either mailed to the wrong address and/or were

duplicative of letters they previously sent.  While the facts clearly show that BANA complied

with all applicable legal obligations in servicing the Fowlers' loan and in responding to the

Fowlers' flood of correspondence, for purposes of this Motion, Defendants seek the dismissal of

this action on grounds that the Fowlers' claims fail procedurally and substantively as a matter of

law for multiple reasons.

        First, the Fowlers' claims against BAC should be dismissed because BAC is not an

appropriate party.  Second, the Fowlers have failed to state a viable claim under the Real Estate

Settlement Procedures Act ("RESPA") because: (i) their inquiries did not constitute "qualified

written requests"; (ii) BANA fulfilled its obligations with respect to any mailings that did

qualify; and (iii) the Fowlers fail to allege a right to actual or statutory damages.  Third, the

Fowlers' Truth in Lending Act ("TILA") claim is untimely because it accrued outside the

applicable one-year statute of limitations.  Fourth, the Fowlers have failed to allege a violation of

Colo. Rev. Stat. § 38-40-103 because they have not pled the necessary elements of the claim or

resulting damages.  Finally, the Fowlers' remaining claims fail for a host of reasons, including

that: (i) the claims are predicated on a misinterpretation of a May 2012 conditional offer for

relocation assistance; (ii) the claims are barred by the Credit Agreement Statute of Frauds; (iii)

the Fowlers fail to allege the required elements of a fraudulent inducement claim; (iv) the

Fowlers fail to meet the public impact requirement of a Colorado Consumer Protection Act

("CCPA") claim; and (v) the Fowlers fail to allege conduct by BANA that is extreme and outrageous as a matter of law.  The allegations in the Complaint and exhibits attached thereto make clear that none of these pleading deficiencies can be remedied.  Accordingly, the Fowlers' Complaint [#1] [1] should be dismissed in its entirety with prejudice.

## RELEVANT FACTS

The following facts, to the extent taken from the allegations in the Complaint, are accepted as true solely for purposes of this Motion.

### A.    The Fowlers' Mortgage Loan

1.    The Fowlers obtained a mortgage loan from BANA in 2006, secured by their real property located at 8725 Soapweed Road, Calhan, Colorado 80808 (the "Property").  *See* Compl. at ¶¶ 3, 10.  The original principal balance of the Fowlers' mortgage loan was $648,000.  *See* Note and Deed of Trust, exhibits to the Fowlers' C.R.C.P. 120 proceeding (El Paso County Case No. 2013CV001661), collectively attached hereto as Exhibit A. [2]

2.    Beginning in March 2009, the Fowlers defaulted on their mortgage loan payment obligations.  *See* Payment History, exhibit to the Fowlers' C.R.C.P. 120 proceeding (El Paso County Case No. 2013CV001661), attached hereto as Exhibit B.  The Fowlers admit that their loan was in default – meaning they made no payments – for a five and a half year period, beginning in March 2009 and ending in October 2014.  Compl. at ¶ 23; May 6, 2015 Loan

---

[1] "[#1]" is an example of the convention used by the Court, and adopted herein by Defendants, to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF).

[2] Defendants ask that the Court take judicial notice of the above referenced exhibits and attach the same for the Court's convenience.  At any stage of the proceedings the court may take judicial notice of a fact that is not subject to reasonable dispute, a requirement that is satisfied if the fact is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). "[F]acts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment. … This allows the court to take judicial notice of its own files and records, as well as facts which are a matter of public record." *Tal v. Hogan*, 453 F.3d 1244, 1264 n. 24 (10th Cir. 2006) (citations omitted).

History, Compl. Ex. 269 [#33-21] at pp. 8-12 (showing no "regular payments" posted between February 17, 2009 and November 4, 2014).[3]

3.      Beginning shortly after the Fowlers' March 2009 default, and continuing for several years, BANA worked with the Fowlers to explore possible alternatives to foreclosure, including, but not limited to, loan modification reviews and reviews for a potential short sale of the Property.  *See* Compl. at ¶¶ 24, 75.

4.      In early 2013, it appeared these loss mitigation efforts had been unsuccessful, and BANA initiated foreclosure proceedings through the El Paso County Public Trustee's office by filing a January 31, 2013 Notice of Election and Demand for Sale (No. EPC201300208) and a March 29, 2013 C.R.C.P. 120 foreclosure action in El Paso County District Court (Case No. 2013CV001661).

5.      Further discussions with the Fowlers ensued, and BANA eventually withdrew the foreclosure action on May 14, 2014, choosing instead to explore additional loss mitigation options.  *See* May 14, 2014 Order in Case No. 2013CV001661, attached hereto as Exhibit D.[4]

6.      The Fowlers remained in default on their mortgage loan until they were approved for a loan modification in October 2014.  *See* Compl. at ¶¶ 23, 24, 95.  Among other terms, the

---

[3] Defendants cite to a number of exhibits to the Complaint throughout this Motion.  The Court can consider these documents without converting the Motion into a motion for summary judgment.  *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (courts can consider "documents attached to the complaint" in ruling on a motion to dismiss without conversion); *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001) ("In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court may look both to the complaint itself and to any documents attached as exhibits to the complaint.").  For the Court's convenience, all of the referenced exhibits are also collectively attached hereto as Exhibit C in the order they appear in this Motion.

[4] The Court can take judicial notice of public records filed in a borrower's Rule 120 proceeding without converting a motion to dismiss into a motion for summary judgment.  *See Rader v. Citibank, N.A.*, No. 14-CV-00784-CMA-BNB, 2014 WL 5152357, at *3 (D. Colo. Oct. 14, 2014) aff'd, No. 14-1472, 2015 WL 5933556 (10th Cir. Oct. 13, 2015) ("this Court may consider the public records attached as exhibits to Defendants' Motion, including the documents filed in Archuleta County case number 2012–cv–000143, without converting the pending Motion to Dismiss into a motion for summary judgment.").

modification reduced the loan's outstanding principal balance by more than $551,000. *See* January 2, 2015 Loan Modification Agreement, Compl. Ex. C250 [#33-2] at §3(B) ("$551,752.56 of combined principal balance is hereby permanently forgiven …").

7.      The Fowlers' mortgage loan was transferred to another servicer in May 2015. *See* April 23, 2015 BANA Notice of Service Transfer, Compl. Ex. C267 [#33-19] at p.1 ("On May 16, 2015 the servicing of your above referenced mortgage will transfer to Caliber Home Loans, Inc. As of that date, your new servicer, Caliber Home Loans, Inc. will support all of your loan servicing, including billing, payment, processing and customer support.").

**B.      The Fowlers' Serial Mailings**

*1.      Mailings sent during the Fowlers' March 2009 - October 2014 default*

8.      After their March 2009 default, the Fowlers began inundating BANA with hundreds of serial mailings. *See* Compl. at ¶ 26.

9.      The Fowlers admit their mailings were duplicative, as they "initially … sent their QWR's to addresses not designated for receipt of QWR's" (Compl. at ¶ 35), and then "copied and re-sent the same correspondence to addresses designated by [BANA]." Compl. at ¶ 26.

10.      The Complaint alleges that BANA responded to the Fowlers' written inquiries on at least 86 occasions.[5] Compl. at ¶ 31.

11.      In the referenced responses, BANA provided the Fowlers with pertinent loan information, including, but not limited to: (i) loan statements, including payment histories, servicing expenses, tax and insurance payments, and late charges (*see* Compl. Exs. C71 [#29-97 and #29-98], C273 [#33-25]); (2) escrow account analyses (*see* Compl. Exs. C242 [#32-49],

---

[5] BANA disputes that only 86 responses were issued, but will assume the truth of this allegation for purposes of this Motion. BANA notes that of the more than 270 additional exhibits to the Complaint recently filed by the Fowlers, the vast majority appear to be correspondence from BANA responding to the Fowlers' various mailings.

C272 [#33-24]); (3) the Fowlers' loan file, including copies of the Note, Deed of Trust, and HUD-1 Settlement Statement (*see* Compl. Ex. C71 [#29-97 and #29-98]); and (4) narratives identifying BANA as the then-current owner of the Fowlers' Note and servicer of their mortgage loan. *Id.*

2.       *Mailings sent between October 2014 and May 2015*

12.       The Fowlers allege that their loan was no longer delinquent after October 2014, when they received their loan modification and significant principal reduction. Compl. at ¶ 24.

13.       Between October 2014 and the time their mortgage loan was transferred in May 2015, the Fowlers sent three letters, each dated March 18, 2015 ("March 2015 Mailings"). *See* Fowler March 2015 Mailings, Compl. Ex. 39-DTFC-01 through 39-DTFC-03 [#16-22] at pp. 1-7. For the Court's convenience, the March 2015 Mailings are also collectively attached as Exhibit E hereto.

14.       The Fowlers' March 2015 Mailings did not request information related to the servicing of their loan, but instead sought the following: (i) "receipt dates" for the Fowlers' previous mailings (Compl. Ex. 39-DTFC-01 [#16-22] at pp. 1-2); (ii) an explanation as to why a BANA representative failed to return Mr. Fowler's phone calls (Compl. Ex. 39-DTFC-02 [#16-22] at pp. 3-7); and (iii) information related to the signing of the Fowlers' loan modification (Compl. Ex. 39-DTFC -03, [#16-22] at p. 7).

3.       *Mailings sent after the May 2015 service transfer*

15.       Beginning on June 16, 2015 – after the May 2015 service transfer, of which the Fowlers had previously been advised – the Fowlers again flooded BANA with more than 280 repeat mailings. *See generally* Compl. Exs. 1 - 46.

16.     The Fowlers admit that for this round of mailings, they simply "re-sent [their previous mailings] … a third time."  Compl. at ¶ 36.

## STANDARD OF REVIEW

### A.     Rule 12(b)(6) Standard

In ruling on a Rule 12(b)(6) motion, the court "assume[s] the factual allegations are true and ask[s] whether it is plausible that the plaintiff is entitled to relief."  *Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  Conclusory allegations are not enough to withstand a motion to dismiss."  *Id.*  (citations and internal quotations omitted).  Legal conclusions, bare assertions, and conclusory allegations "are not entitled to the assumption of truth."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678-80 (2009).  "The question is whether, if the allegations are true, it is plausible and not merely possible that the plaintiff is entitled to relief under the relevant law."  *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1192 (10th Cir. 2009).  "[A] complaint must explain what each defendant did to [the plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated."  *Nasious v. Two Unknown B.I.C.E. Agents, at Arapahoe Cnty. Justice Ctr.*, 492 F.3d 1158, 1163 (10th Cir. 2007).

Generally, a court considers only the contents of the complaint when ruling on a Rule 12(b)(6) motion.  *Gee*, 627 F.3d at 1186.  Exceptions to this general rule include documents incorporated by reference in the complaint; documents attached to the complaint; documents referred to in and central to the complaint, when no party disputes their authenticity; and "matters of which a court may take judicial notice."  *Id.*

## ARGUMENT

**A.      The Fowlers' Claims Against BAC Should Be Dismissed Because BAC Is Not An Appropriate Party.**

As a threshold issue, BAC should be dismissed with prejudice because it is not a proper party to this action.  Parent corporations are not *ipso facto* liable for the acts of their subsidiaries. *See Rosenberg v. Deutsche Bank AG*, No. 11-cv-02200-WJM-CBS, 2012 WL 3744632 at *6 (D. Colo. May 22, 2012) ("A holding or parent company has a separate corporate existence and is treated separately from the subsidiary in the absence of circumstances justifying disregard of the corporate entity."); *Mandelbaum v. Fiserv, Inc.*, 787 F. Supp. 2d 1226, 1235 (D. Colo 2011) (dismissing a parent holding company where plaintiff's claims were directed to the actions of the subsidiary and not the parent, because "it is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation … is not liable for the acts of its subsidiary").

The Fowlers have not alleged any conduct for which BAC can be held liable — nor could they.  BAC is a holding company, whose subsidiary, BANA, is a separate and distinct entity. *See* Public FDIC Records, attached hereto as Exhibit F.[6]  Indeed, the Fowlers acknowledge that BAC is merely "a holding company."  Compl. at ¶ 7.  The only other statements in the Complaint related to BAC consist of the Fowlers' own purported description of BAC's corporate history, not allegations of wrongdoing.  Compl. at ¶¶ 7-8.  A plain reading of the Fowlers' Complaint and the exhibits attached thereto makes clear that all of their claims are directed at

---

[6] At any stage of the proceedings the court may take judicial notice of a fact that is not subject to reasonable dispute, a requirement that is satisfied if the fact is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2). "[F]acts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment. . . . This allows the court to take judicial notice of  . . . facts which are a matter of public record."  *Tal*, 453 F.3d at n. 24.

BANA, not BAC.  For example, the Fowlers: (i) allege on the face of their Complaint that they addressed the mailings that form the basis of their RESPA, TILA, and Colo. Rev. Stat. § 38-40-103 claims to "Bank of America, N.A.," not BAC (Compl. at ¶ 36); (ii) base their promissory estoppel and fraudulent inducement claims on a May 8, 2012 letter sent by "Bank of America Home Loans," to which BANA is the successor by merger (Compl. at ¶ 75; Compl. Ex. C46 [#29-52]); and (iii) base their CCPA and outrageous conduct claims on a combination of the aforementioned mailings.  Compl. at ¶¶ 82-109.  Because the Fowlers have not and cannot allege that BAC was involved in any of the purported misconduct that forms the basis of their Complaint, the Fowlers have failed to state a claim against BAC upon which relief may be granted.  Their claims against BAC should be dismissed with prejudice.  *See Mandelbaum*, 787 F. Supp. 2d at 1235.

**B.     The Fowlers Fail To State A Viable Claim Under RESPA Because Their Inquiries Were Not Qualified Written Requests And They Cannot Allege Resulting Damages.**

        *1.     The Fowlers' serial mailings did not constitute "qualified written requests" under RESPA.*

The Fowlers sent their mountain of mailings to BANA during three time periods:  (1) March 2009 to October 2014, (2) March 2015, and (3) after May 2015.  As discussed below, none of the Fowlers' mailings constituted qualified written requests ("QWRs") under RESPA because: (1) the Fowlers' mortgage loan was in default from March 2009 until October 2014, and courts are clear that RESPA's QWR requirements do not apply to inquiries sent during default; (2) the Fowlers' March 2015 Mailings were not related to the servicing of their mortgage loan; and (3) the Fowlers' post-May 2015 inquiries were sent after servicing of their loan had been transferred to another servicer.

        i.     <u>The Fowlers' March 2009 to October 2014 mailings were not QWRs under RESPA because their mortgage loan was in default.</u>

Under RESPA, "[i]f any servicer of a federally related mortgage loan receives a qualified written request ["QWR"] from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 5 days …" 12 U.S.C. § 2605(e)(1)(b). These obligations apply only to a "servicer" of the loan, which is defined as "the person responsible for servicing of a loan." 12 U.S.C. § 2605(i)(2).

"The term 'servicing' means <u>receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan</u> … and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3) (emphasis added). Cases interpreting RESPA have repeatedly held that "servicing" ceases once a loan goes into default because the bank is not receiving any scheduled periodic payments from the borrower. *See, e.g., Fluegge v. Nationstar Mortgage, LLC,* No. 12-15500, 2013 WL 5435320, at *3 (E.D. Mich. Sept. 27, 2013) (dismissing RESPA claim on grounds that defendant was no longer "servicing" the loan because it was "not receiving any scheduled periodic payments" for two years after plaintiff's default); *Daw v. Peoples Bank & Trust Co*., 5 Fed. Appx. 504, 505 (7th Cir. 2001) (concluding that once the plaintiff defaulted on the loan, the bank was no longer accepting scheduled periodic payments and was therefore not a "servicer" of the loan); *see also Bilek v. Bank of America, N.A.,* No. 07 C 4147, 2011 WL 830948, *5-6 (N.D. Ill. Mar. 3, 2011) (finding that defendant was no longer receiving any scheduled periodic payments under RESPA where borrowers defaulted and admittedly failed to make over two years' worth of loan payments); *Bros v. Bank of Am*., No. 12-cv-3121, 2012 WL 4471590, *3 (N.D. Cal. Sept. 26, 2012) (finding that a 2012 letter was not

a "QWR" under RESPA in light of the borrower's 2008 default and the bank's initiation of foreclosure in 2009).

Here, the Fowlers seek to recover damages purportedly arising from the 867 mailings they sent beginning in August of 2012.[7]  Compl. at ¶ 26.  However, as the Fowlers themselves concede, they defaulted on their mortgage loan in March 2009 (Compl. at ¶ 31) and failed to make a single mortgage payment or otherwise cure their default until they received a loan modification in October 2014.  *See* May 6, 2015 Loan History, Compl. Ex. 269 [#33-21] at pp. 8-12 (showing no "regular payments" between February 17, 2009 and November 4, 2014). Thus, it is undisputed that BANA did not receive any scheduled periodic payments between March 2009 and October 2014, and it was not "servicing" the Fowlers' loan, as defined under RESPA, during this period of time.  For this reason, the Fowlers' mailings from March 2009 to October 2014 do not qualify as QWRs under RESPA, and the Fowlers cannot base their RESPA claim on these mailings.

      ii.     The Fowlers' March 2015 Mailings were not QWRs because they did not relate to loan servicing.

The Fowlers March 2015 Mailings were not QWRs under RESPA because they did not request information related to the servicing of the Fowlers' mortgage loan.  Under RESPA, "a letter cannot be 'qualified' under the statute if it does not relate to servicing of the account." *Christenson v. Citimortgage, Inc*., No. 12-CV-02600-CMA-KLM, 2013 WL 5291947, at *4 (D.

---

[7] As additional grounds for dismissal, BANA was under no obligation to respond to the Fowlers' 867 duplicative and burdensome inquiries.  RESPA does not require a loan servicer to respond to borrower's numerous qualified written requests if the requests essentially raise the same dispute and the servicer has already adequately addressed the request.  *Hawkins-El v. First Am. Funding, LLC*, 891 F. Supp. 2d 402, 409 (E.D. N.Y. 2012). "The RESPA and QWR regulation was not designed, and should not be used, as a vehicle to permit in default borrowers to flood their lender with documentation requests, on the hope that a failure to timely comply will lead to an affirmative cause of action, or a defense to a collection or foreclosure action."  *Eifling v. Nat'l City Mortg*., No. cv-10-5713, 2011 WL 893233, *3 (W.D. Wash. Mar. 15, 2011).

Colo. Sept. 18, 2013) (citations omitted); *see also Gates v. Wachovia Mortgage*, FSB, No. 2:09-CV-02464-FCDEFB, 2010 WL 2606511, at *3 (E.D. Cal. June 28, 2010) ("Courts routinely interpret section 2605 as requiring a QWR to relate to the servicing of a loan, rather than the creation or modification of a loan.").  Inquiries that only relate to loss mitigation or loan modification are not qualified requests under RESPA.  *Christenson*, 2013 WL 5291947, at *4 ("inquiries regarding loss mitigation or loan modification . . . do not constitute qualified written requests."); *see also Beacham v. Bank of Am., N.A.*, No. 3:12-CV-00801-G BF, 2012 WL 2358299, at *3 (N.D. Tex. May 25, 2012) ("Requesting information regarding loss mitigation review does not relate to 'servicing' of a loan as provided in 2605(i)(3).  Such requests do not 'dispute or request information regarding how a loan is being serviced.'").

Here, the Fowlers sent three letters in March 2015, none of which relate to the servicing of their mortgage.  *See* Fowler March 2015 Mailings, Compl. Exs. 39-DTFC-01 through 39-DTFC-03 [#16-22] at pp. 1-7. The first letter requests only a confirmation of the "receipt and dates of receipt of all correspondence" from  A.J. Fowler.  *See* Compl. Ex. 39-DTFC-01 [#16-22] at pp. 1-2.  The second and third letters demand only information related to the Fowlers' loan modification:  (i) "can you kindly inform me as to why [a BANA representative] would not return my six (6) phone calls … regarding the loan modification auto debit not being activated as signed?" (Compl. Ex. 39-DTFC-02 [#16-22] at pp. 3-7); and (ii) "can you kindly inform me as to why the signed auto debit from within the modification package was not implemented when the modification went into effect?"  Compl. Ex. 39-DTFC-03 [#16-22] at p. 7.  A plain reading of these letters reveals that they relate to loan modification and other issues unrelated to the "servicing" of the Fowlers' loan.  *See, e.g.*, *Christenson*, 2013 WL 5291947, at *6 (finding that a letter was not a QWR where borrowers asked a litany of questions related to loss mitigation,

special forbearances, and the bank's failure to respond to their calls with a consultation interview); *Van Egmond v. Wells Fargo Home Mortgage*, No. SACV 12-0112 DOC, 2012 WL 1033281, at *4 (C.D. Cal. Mar. 21, 2012) ("RESPA … only obligates loan servicers to respond to borrowers' requests for information relating to the *servicing* of their loans, which does not include loan modification information.").  Therefore, the March 2015 Mailings cannot form the basis of the Fowlers' RESPA claim.  *See Ogden*, 2014 WL 4065617, at *2 (J. Watanabe) (claims predicated on requests that are not directed to the "servicing of Plaintiffs' loan … must be dismissed").

The Fowlers' March 2015 Mailings are not QWRs for the additional reason that none of the letters explain how, if at all, the Fowlers' account was in error.  *See* Fowler March 2015 Mailings, Compl. Exs. 39-DTFC-01 through 39-DTFC-03 [#16-22] at pp. 1-7.  "Generally requesting an account correction, without explaining how the account is in error, does not suffice under [RESPA]."  *Christenson*, 2013 WL 5291947, at *6 (holding that a letter did not constitute a QWR, in part, because borrowers failed to explain how the account was allegedly in error); *see also Pettie v. Saxon Mortg. Services*, 2009 WL 1325947 at *2 (W.D.Wash. 2009) (finding letter not a QWR where it did not provide "reasons for [borrowers'] dispute of the amount due on the loan"); *Boatright v. Auora Loan Servs.*, No. C-12-00009 EDL, 2012 WL 2792415, at *15 (N.D. Cal. July 9, 2012) ("Plaintiff's QWR is not a proper one because it does not include a statement of the reasons that Plaintiff believes that the account is in error or provide sufficient detail to Defendant regarding other information sought by Plaintiff.").

Finally, even if the March 2015 Mailings could be construed as QWRs, exhibits to the Fowlers' Complaint make clear that BANA complied with its RESPA obligations because it acknowledged receipt of the mailings within five business days of receipt, on March 26, 2015,

and substantively responded within 30 business days of receipt, on May 6, 2015.  *See* March 26,

2015 Acknowledgment, Compl. Ex. 259 [#33-11] ("Your recent home loan inquiry was received

and we're in the process of conducting our review to provide you with a response."); March 31,

2015 Notice of Auto Debit Discontinuation, Compl. Ex. C261 [#33-13] ("Our records indicate

your PayPlan/12 service has been discontinued"); *see also* Fowler Damages Chart, Compl. Ex.

TR2 [#10-7] at p. 2 (showing the March 18, 2015 mailings were not sent until the Fowlers

visited the post office for the first time on March 19, 2015); *see also* 12 U.S.C. § 2605(e)(1)(a)

(requiring a servicer to respond to a qualified written request within 5 business days); 12 U.S.C.

§ 2605(e)(2) (requiring a substantive response within 30 business days).

      iii.    The Fowlers' post-May 2015 mailings were not QWRs because they were
sent after BANA stopped servicing the Fowlers' mortgage loan.

RESPA imposes no obligation upon former servicers to answer alleged QWRs after the

subject mortgage loan has been transferred to another servicer.[8]  Here, the Fowlers' mortgage

loan was transferred to another servicer on May 16, 2015.  *See* April 23, 2015 BANA Notice of

Service Transfer, Compl. Ex. C267 [#33-19] at p. 1 ("On May 16, 2015 the servicing of your

above referenced mortgage will transfer to Caliber Home Loans, Inc.  As of that date, your new

servicer, Caliber Home Loans, Inc. will support all of your loan servicing, including billing,

payment, processing and customer support.").  After May 16, 2015, BANA was no longer

"servicing" the Fowlers' mortgage loan under RESPA because it was no longer responsible for

"receiving any scheduled periodic payments" from the Fowlers, or "making the payments of

principal and interest" pursuant to the terms of the Fowlers' mortgage loan.  *See* 12 U.S.C.

---

[8] 24 C.F.R. § 3500.21(e)(2)(ii), which arguably imposed a one-year post-transfer response obligation upon transferor servicers, is no longer effective as of June 10, 2014.  *See* Act of Removal of Regulations Transferred to the Consumer Financial Protection Bureau, 79 FR 34224-01; *see also Patrick v. CitiFinancial Corp., LLC*, No. 3:15CV296-WHA, 2015 WL 3988860, at *4 (M.D. Ala. June 30, 2015) (noting that 24 C.F.R. § 3500.21(e)(2)(ii) and its one year obligation are no longer in effect).

§ 2605(i)(3); *Jones v. ABN Amro Mortgage Grp., Inc.,* 606 F.3d 119, 125 (3d Cir. 2010) (entities

were not "servicers" under RESPA "because they were not 'responsible for … making the

payments of principal and interest' received from the [borrowers] 'as may be required pursuant

to the terms of the [Lenders'] loan'"); *Fantroy v. First Fin. Bank, N.A.*, No. 3:12-CV-82-N-BH,

2013 WL 4434913, at *9 (N.D. Tex. Aug. 19, 2013) (written requests not QWRs where they

were sent "more than five years after his loan was terminated by the foreclosure and ceased

being serviced").  Accordingly, mailings sent by the Fowlers to BANA after May 2015 cannot

form the basis of a RESPA claim.

> 2.   *The Fowlers' RESPA claim should be dismissed because they have not plausibly alleged actual or statutory damages.*

Even assuming any of the Fowlers' mailings were QWRs, to state a RESPA claim, the

Fowlers must plead "actual damages stemming from a failure to respond to their requests or a

pattern or practice of misconduct" entitling them to statutory damages.  *Toone v. Wells Fargo*

*Bank, N.A.*, 716 F.3d 516, 523 (10th Cir. 2013); *see also Ogden,* 2014 WL 4065617, at *2

(adopting J. Watanabe's recommendation to dismiss a RESPA claim where the plaintiff "failed

to state a plausible claim for either actual or statutory damages"); *Frazile v. EMC Mortg. Corp*.,

382 Fed.Appx. 833, 836 (11th Cir.2010) (holding that a damages allegation "is a necessary

element of any claim under § 2605").  Here, the Fowlers' RESPA claim should be dismissed

because the Fowlers neither allege they suffered actual damages nor establish a basis for

statutory damages.

> i.   <u>The Fowlers fail to allege the existence of actual damages.</u>

RESPA states that the failure to comply with its provisions creates liability for "an

amount equal to … any actual damages to the borrower <u>as a result of the failure</u>."

§ 2605(f)(1)(A) (emphasis added).  Thus, to state a claim for actual damages, a plaintiff must

adequately plead a direct causal link between the specific RESPA violation asserted and the resulting damages. *Ogden*, 2014 WL 4065617, at *2 (J. Watanabe); *see also Kapsis v. Am. Home Mortg. Servicing Inc.*, 923 F.Supp.2d 430, 445, 2013 WL 544010, at *13 (E.D.N.Y. Feb. 14, 2013) (to survive a motion to dismiss, a RESPA claim "must contain 'factual allegation[s] suggesting that any damages [plaintiff] suffered were proximately caused by [defendant's] violation of § 2605'"); *Hintz v. JPMorgan Chase Bank, N.A.*, 686 F.3d 505, 510-11 (8th Cir. 2012) ("damages for a RESPA claim must be pled with particularity, limiting the cause of action to circumstances in which plaintiff can show that a failure to respond or give notice has caused them actual harm.").

Here, the Complaint fails to plead the requisite causal link between BANA's alleged failure to respond to the flood of mailings and the Fowlers' alleged damages. Instead, the Fowlers assert, without any circumstantial context or factual support, that they are entitled to recover for "inaccurate credit reporting," "attorney's fees," and the costs they incurred in preparing their plethora of inquiries, such as "office supplies," "postage mailing," "printing," "processing," and "professional administrative time and travel." Compl. at ¶ 51. Aside from bare allegations that these damages are "causally and proximately linked to [BANA]'s failure to comply with RESPA" (Compl. at ¶ 40) and "would not have been incurred … if [BANA] had responded to at least the first of each of Plaintiff's written inquiries," Compl. ¶ at 41,[9] the Fowlers' Complaint is devoid of any facts making the required connection to the purported RESPA violations. For example, the Fowlers do not explain why they blame BANA, rather than their own admitted failure to pay their mortgage, for any supposed "credit reporting" discrepancies. To the contrary, the Fowlers' own exhibits show that BANA supplied them with

---

[9] This allegation is nonsensical in light of the admission that the Fowlers "sent their [initial] QWRs to addresses not designated for receipt of QWRs." Compl. at ¶ 35.

all of the information they needed to resume making their mortgage payments if they so desired. *See*, *e.g.,* Compl. Exs. C71 [#29-97 and #29-98] and C273 [#33-25] (providing the Fowlers' loan file, including loan history statements, payment histories, tax and insurance payment histories and late charges; C273 [#33-25]; Compl. Ex. C191 [#31-50] at p. 1-2 (identifying the current servicer and holder of the Fowlers' mortgage loan).

In short, the Fowlers' vague and cursory allegations fail under RESPA. *See Henson v. Bank of Am.*, 935 F. Supp. 2d 1128, 1146 (D. Colo. 2013) (finding naked allegations seeking "actual damages" for "postage," "copying," "transportation," and "inconvenience" insufficient); *Corazzini v. Litton Loan Servicing LLP*, No. 1:09-CV-199, 2010 WL 6787231, at *12 (N.D.N.Y. June 15, 2010) ("courts have consistently dismissed complaints under RESPA if they do not allege actual damages or state merely that in a conclusory fashion the defendant caused damages to the plaintiff"). For this reason, the Fowlers' RESPA claim should be dismissed.

ii.     The Fowlers have not alleged a basis for statutory damages.

The Fowlers' bid for statutory damages is similarly deficient. First, the Fowlers' RESPA claim cannot be based on statutory damages alone. Section 2605 allows recovery of statutory damages for "any underline damages … in the case of a pattern or practice of noncompliance." 12 U.S.C. § 2605(f)(1)(b) (emphasis added). Because the Fowlers have failed to allege any actual damages stemming from the purported RESPA violation, they are not entitled to "additional" statutory damages under 12 U.S.C. § 2605(f)(1)(b). *See Bonadio v. PHH Mortgage Corp.*, No. 12 CV 3421 VB, 2014 WL 522784, at *5 (S.D.N.Y. Jan. 31, 2014) (dismissing RESPA claim on grounds that, "[a]lthough RESPA permits recovery of both actual and statutory damages, proof of actual damages is mandatory to recover on a § 2605(e) violation, and [ ] a

§ 2605(e) claim cannot stand on statutory damages alone"); *see also Selman v. CitiMortgage, Inc.*, No. CIV.A. 12-0441-WS-B, 2013 WL 838193, at *9 (S.D. Ala. Mar. 5, 2013).

Second, the Fowlers do not adequately allege a "pattern or practice of noncompliance" with RESPA sufficient to support the recovery of statutory damages. *See* 12 U.S.C. § 2605(f)(B). "To seek statutory damages under § 2605, Plaintiff must allege facts showing that there is a pattern or practice of noncompliance with the requirements of the section … Merely mouthing the buzzwords 'pattern and practice' in a complaint does not satisfy minimum pleading requirements because it represents a legal conclusion, and such conclusory labels are not credited for Rule 12(b)(6) purposes." *Selman v. CitiMortgage, Inc.*, No. CIV.A. 12-0441-WS-B, 2013 WL 838193, at *9 (S.D. Ala. Mar. 5, 2013); *accord Toone*, 716 F.3d 516, 523; *see also Givant v. Vitek Real Estate Indus. Grp., Inc.*, 2012 WL 5838934, at *4 (E.D.Cal. Nov. 15, 2012) (holding that plaintiff "seeking statutory damages 'cannot rely simply on stock conclusions, but must allege facts that are sufficient to raise a right to relief above the speculative level'"); *Davis v. Greenpoint Mortgage Funding, Inc*., 2011 WL 7070222, at *5 (N.D.Ga. Sept. 19, 2011) (allegation that defendant "demonstrated that its general policy was not to prove the type of information sought [in Plaintiff's correspondence]" and "has made it a practice, based on the above policy, not to comply with the [QWR] provisions" were conclusory and insufficient to permit the "pattern or practice" claim for statutory damages to survive the motion to dismiss).

The Tenth Circuit has held that plaintiffs must show that the alleged pattern or practice impact other borrowers to recover statutory damages under RESPA. *See Toone*, 716 F.3d at 523 (affirming dismissal of a claim for statutory damages due to the "conclusory nature of the allegations of the complaint and the failure to allege any violations with respect to other

borrowers"); *Ogden,* 2014 WL 4065617, at *10 (J. Watanabe) ("Evidence of RESPA violations with just two consumers would not be a pattern or practice of violations").

Here, the Fowlers do not allege facts suggesting that BANA engaged in a "pattern or practice" of violating RESPA that impacted other borrowers. *See* Compl. at ¶¶ 21-43. Instead, the Fowlers merely allege that the "non-responses and/or untimely responses [to their mailings] . . . form a 'pattern or practice of non-compliance' under RESPA." Compl. at ¶ 42. This mere mouthing of buzzwords fails to show any impact on other borrowers and is insufficient to support a claim for statutory damages under RESPA. *See Ogden,* 2014 WL 4065617, at *10 (J. Watanabe). The fact that the Fowlers themselves sent 867 mailings to BANA does not change this result. Compl. at ¶ 43. As discussed above, most of these mailings were duplicative, and none support an alleged RESPA violation because: (i) BANA was not actively "servicing" the Fowlers' mortgage loan while they were in default from 2009 until October 2014; (ii) the March 2015 Mailings did not seek information concerning "servicing," and even if they did, BANA timely and adequately responded to them; and (iii) the Fowlers' mortgage loan had already been transferred to a new servicer prior to the Fowlers' post-May 2015 letters.

Because the Fowlers have not alleged an entitlement to actual or statutory damages under RESPA, their claim should be dismissed.

**C.   The Fowlers' TILA Claim Is Barred By The Applicable One-Year Statute Of Limitations.**

The Fowlers' TILA claim should be dismissed because the Fowlers failed to commence this action within one year of the date that BANA responded to their final TILA inquiry.

Claims for damages under 15 U.S.C. § 1641(f)(2) are subject to a one-year statute of limitations, which accrues once an allegedly inadequate response has been issued. *Pike v. Bank of Am., N.A.*, No. 1:14 CV 2529, 2015 WL 3824390, at *6 (N.D. Ohio June 19, 2015); *Bradford*

*v. HSBC Mortg. Corp.*, 829 F. Supp. 2d 340, 352 (E.D. Va. 2011) (the one-year limitations period applicable to a § 1641(f)(2) claim "begins to run at the earlier of the expiration of a reasonable time or the sending of an inadequate response").

Here, as alleged on the face of their Complaint, the Fowlers sent their final TILA inquiry on June 9, 2014.  Compl. at ¶ 48 (identifying the last TILA request as document "04-1057 #2 [delivery date] 6/9/14").  BANA substantively responded to this inquiry on June 20, 2014, identifying "Bank of America, N.A." as both the owner of the Note and servicer of the Fowlers' mortgage loan and providing BANA's appropriate address and telephone number.  *See* June 20, 2014 BANA Response, Compl. Ex. C191 [#31-50] at p. 1-2.  Assuming, for the sake of argument, this response is "inadequate," the Fowlers' TILA claim accrued when BANA issued the response on June 20, 2014; expired under the one-year statute of limitations on June 20, 2015; and was time-barred when the Fowlers filed this lawsuit on August 20, 2015.  The Fowlers' TILA claim should be dismissed as untimely.

**D.      The Fowlers Have Failed To Plead a Violation of Colo. Rev. Stat. § 38-40-103.**

The Fowlers' claim for violation of "Colo. Rev. Stat. § 38-40-101," which is really a claim for violation of Colo. Rev. Stat. § 38-40-103 and § 38-40-103.5,[10] should be dismissed for a number of reasons.

First, the Fowlers have failed to plead the necessary elements of the claim.  "On the clear and unambiguous language of the statute, §§ 38-40-103 and -104 require … (1) a written request from the debtor, (2) for information concerning the debtor's loan that is (3) readily available to the servicer."  *Christenson*, 2013 WL 5291943, at *15 (report and recommendation adopted in part, rejected in part, No. 12-CV-02600-CMA-KLM, 2013 WL 5291947) (D. Colo. Sept. 18,

_____

[10] As the Complaint makes clear, the heart of this claim is that "Plaintiffs' were aggrieved by Defendants' violations of C.R.S. §§ 38-40-103 & 103.5."  Compl. at ¶ 64.

2013) (quotations omitted); Colo. Rev. Stat. § 38-40-103(2).  A written correspondence seeks "information concerning the debtor's loan" when it relates to "servicing" of the loan. *Christenson*, 2013 WL 5291943, at *15.  Here, the Fowlers' claim fails because they have not alleged that any of their requests sought "information concerning" the "servicing" of their loan, or that any of the requested information was "readily available" to BANA.  *See* Compl. at ¶¶ 57-73.  For these reasons alone, the claim should be dismissed.  *See Christenson*, 2013 WL 5291943, at *15 (dismissal appropriate where plaintiff does not allege facts showing that information was "readily available to the servicer"); *accord McDonald v. J.P. Morgan Chase Bank, N.A.*, No. 12-CV-02749-MSK, 2015 WL 1403419, at *5 (D. Colo. Mar. 23, 2015).

Second, the Fowlers have failed to sufficiently plead the existence of any actual damages caused by BANA's alleged violation of the statute.  Much like RESPA, "to prevail on a claim for violation of § 38-40-103, a plaintiff must prove actual damages."  *Kaspryzk v. PNC Bank, Nat. Ass'n*, No. 13-CV-00247-RBJ-KMT, 2013 WL 3895069, at *5 (D. Colo. July 29, 2013) (interpreting Colo. Rev. Stat. § 38-40-103).  Thus, a plaintiff must plead factual allegations to support the damages claim and conclusory statements are not enough.  *Id.*  Here, the Fowlers have merely cut and pasted in their conclusory RESPA damage allegations to support the existence of actual damages under Colo. Rev. Stat. § 38-40-103.  *See* Compl. at ¶¶ 67, 72, 73.  As discussed, these allegations provide no factual support or circumstantial context as to why or how the purported damages resulted from BANA's alleged conduct.  The Fowlers' Colo. Rev. Stat. § 38-40-103 claim should be dismissed for failure to sufficiently plead the existence of actual damages.

**E.     The Fowlers' Remaining Claims Fail For A Host Of Reasons.**

1.      *The Fowlers' Promissory Estoppel, Fraudulent Inducement, Colorado Consumer Protection Act, and Outrageous Conduct claims are predicated on their misinterpretation of the May 8, 2012 Letter.*

The Fowlers' promissory estoppel, fraudulent inducement, CCPA, and outrageous conduct claims are each predicated on the Fowlers' misreading of a May 8, 2012 letter from BANA (the "May 2012 Letter").[11]  *See* May 2012 Letter, Compl. Ex. C46 [#29-52].  The Fowlers base each of these claims on allegations that the May 2012 Letter constituted "a false notification promising that [the Fowlers] would be enrolled automatically in a short sale program in which they would be eligible to receive $5,000 to $30,000 in relocation assistance and promising them that they would owe nothing more on the property" if they simply "did nothing." *See* Compl. at ¶¶ 75, 83(b), 94.  The Fowlers suggest that BANA breached this "promise" by initiating foreclosure proceedings when the Fowlers failed to cure their default or complete the conditions of a short sale.  *See* Compl. at ¶¶ 77-78.

On its face, the May 2012 Letter is not a promise or even an offer for a short sale, but a potential offer for relocation assistance, subject to certain conditions, including the Fowlers' successful completion of the short sale process.  The Fowlers' Complaint conveniently omits the relevant text of the letter, which states:

> We are committed to helping you avoid foreclosure.  For a limited time, we are offering a short sale program in which you could be eligible to receive **$5,000 - $30,000 … in relocation assistance and owe no more on your mortgage** with the sale of your property. <u>This exclusive offer is available only if your current in-progress short sale is completed by September 26, 2013</u>. The relocation assistance will be paid at closing.

---

[11] Defendants recognize that the Fowlers also allege additional categories of misconduct in support of their CCPA and emotional distress/outrageous conduct claims.  However, both claims fail, in their entirety, as a result of the Fowlers' misinterpretation of the May 2012 Letter, and for the additional reasons set forth herein.

> **If you wish to participate**: Do nothing.  You will be enrolled automatically.
>
> **If you do not wish to participate**:  Ask your real estate agent to … to waive the relocation assistance payment.  Your current short sale will then continue.  If you waive the relocation assistance payment, you will continue with the short sale process with no changes to the terms and conditions of your short sale agreement.
>
> The terms and conditions of your short sale agreement have not changed … You will receive the relocation assistance at the time of closing of the short sale.  <u>If you do not complete the short sale or comply with the terms and conditions of your short sale agreement, you will not receive the relocation assistance payment</u>.
>
> **Tips to successfully complete your short sale**:
> -- Return all requested documents in a timely manner
> -- Respond quickly to counter offers
> -- complete the release of subordinate liens, if applicable
> -- Stay in contact with your real estate agent …

*See* May 2012 Letter, Compl. Ex. C46 [#29-52] (bold in original; underline added).  A plain reading of the May 2012 Letter belies the Fowlers' allegations that they were promised "enroll[ment] automatically in a short sale program" or "that they would owe nothing more on the property" if they simply "did nothing."  *See* Compl. at ¶¶ 75, 83(b), 94.  To the contrary, the letter states that <u>if</u> the Fowlers completed their pending short sale application, closed their short sale by September 26, 2013, and complied with terms of their short sale agreement, they could "do nothing" and still be considered for relocation assistance at the closing of the short sale.  Compl. Ex. C46 [#29-52].  The Fowlers do not and cannot allege they met these conditions – instead, they admittedly "did nothing."  *See* Compl. at ¶ 77.  For this reason alone, the Fowlers' claims for promissory estoppel, fraudulent inducement, violation of CCPA, and outrageous conduct are meritless and should be dismissed.

   2.   *The Fowlers' Promissory Estoppel, Fraudulent Inducement, CCPA, and Outrageous Conduct claims are each barred by the Credit Agreement Statute of Frauds.*

Even if the May 2012 Letter constituted the promise alleged by the Fowlers – that the Fowlers could simply "do nothing" and owe nothing more on their mortgage loan – their promissory estoppel, fraudulent inducement, CCPA, and outrageous conduct claims would still fail under the Credit Agreement Statute of Frauds ("CASF") because, under the Fowlers' interpretation of the May 2012 Letter, each of these claims is predicated on unsigned representations related to a credit agreement greater than $25,000.  Specifically, the CASF provides as follows:

> Notwithstanding any … law to the contrary, … no debtor … may file or maintain an action or a claim relating to a credit agreement involving a principal amount in excess of twenty-five thousand dollars unless the credit agreement is <u>in writing and is signed</u> by the party against whom enforcement is sought.

Colo. Rev. Stat. § 38-10-124(2) (emphasis added).  The "plain language of the statute renders representations, warranties, or omissions in connection with credit agreements inoperative" unless they are reduced to a signed writing.  *Norwest Bank Lakewood v. GCC P'ship*, 886 P.2d 299, 302 (Colo.  App. 1994).  "Thus, as a matter of law, reliance upon such representations made in connection with negotiations for credit agreements or their waiver, modification, or extension can be neither reasonable nor justifiable."  *Id.*  Courts are to interpret the CASF "broadly … to give effect to its central purpose."  *Premier Farm Credit, PCA v. W-Cattle, LLC*, 155 P.3d 504, 514 (Colo. App. 2006).

The CASF "not only appl[ies] to claims involving transactions which are characterized exclusively as credit agreements, but also applies to claims which merely relate to credit agreements involving a principal amount exceeding $25,000."  *Univex Int'l, Inc. v. Orix Credit Alliance, Inc.*, 914 P.2d 1355, 1358 (Colo. 1996).  The CASF also applies to bar unsigned promises not to foreclose.  *See Fed. Deposit Ins. Corp. v. Fisher*, 2013 CO 5, ¶ 18, 292 P.3d 934,

939 ("In this instance, Fisher is attempting to enforce an oral promise not to foreclose upon the loan.  That promise would amount to an attempt to enforce an unwritten credit agreement barred by CASF"); *Clark v. Green Tree Servicing LLC*, 69 F. Supp. 3d 1203, 1219 (D. Colo. 2014) (CASF applies to promises to "forbear repayment of money, as well as a promise[s] to make any other financial accommodation"); *Hewitt v. Pitkin Cnty. Bank & Trust Co.,* 931 P.2d 456, 459 (Colo. App. 1995) (CASF properly applied to preclude evidence of alleged oral promise to delay foreclosure).

Here, the Fowlers' claims are predicated on the May 2012 Letter's purported representations, supposedly promising that the Fowlers "would be enrolled automatically in a short-sale program" and "that they would owe nothing more on their mortgage with the sale of the property" if they simply "did nothing."  Compl. at ¶¶ 75, 83(b), 94; May 2012 Letter, Compl. Ex. C46 [#29-52].  The Fowlers claim that these alleged promises were broken when BANA eventually initiated foreclosure instead.  Compl. at ¶ 78.

Fatal to their claims is the fact that the May 2012 Letter is an unsigned writing, from an unidentified member of BANA's "Short Sale Team," supposedly relating to financial accommodations on a credit agreement (the mortgage loan), which even the Fowlers recognize is a "form letter."  *See* May 2012 Letter, Compl. Ex. C46 [#29-52]; Compl. at ¶ 84 ("by information and belief this same form letter has been sent to thousands of members of the consuming public …"); *see also Clark v. Green Tree Servicing LLC*, 69 F. Supp. 3d 1203, 1219 (D. Colo. 2014) (electronic signature deemed insufficient to satisfy the CASF in form letter notifying borrower of conditional eligibility for loan modification).  Any "reliance" by the Fowlers on these alleged representations was unreasonable and unjustified as a matter of law, and their promissory estoppel, fraud, CCPA, and emotional distress/outrageous conduct claims

should be dismissed as barred by the CASF.  *See PayoutOne v. Coral Mortgage Bankers*, 602 F.

Supp. 2d 1219, 1226 (D. Colo. 2009) ("unlike the traditional statute of frauds, a party may not

avoid the writing requirement in the credit agreement statute of frauds by arguing promissory

estoppel"); *Ivar v. Elk River Partners, LLC*, 705 F. Supp. 2d 1220, 1228-30 (D. Colo. 2010)

(dismissing plaintiff's CCPA claim as barred by the statute of frauds); *Hewitt*, 931 P.2d 456,

458-59 (dismissing intentional misrepresentation claim under the CASF); *Dalton v. Countrywide

Home Loans, Inc.*, 828 F. Supp. 2d 1242, 1252 (D. Colo. 2011) (outrageous conduct claims

dismissed to the extent the conduct is based on alleged oral representations barred by the CASF).

       3.       *The Fowlers' Fraudulent Inducement claim fails as a matter of law.*

The Fowlers' fraudulent inducement claim fails as a matter of law because the Fowlers

have failed to plead the elements required to establish fraud under Colorado law.  To establish

actionable fraud, the Fowlers must allege: (1) the misrepresentation of a fact, (2) known to be

untrue by the maker, (3) made with an intent to deceive and to induce the other party to act in

reliance thereon to his detriment.  *Allison v. Bank One-Denver*, No. CIV.A. 91-S-1422, 1994 WL

637403, at *11 (D. Colo. Jan. 7, 1994).  However, the Fowlers' Complaint is devoid of any

allegations that BANA made misrepresentations "known to be untrue," or that such statements

were made "with an intent to deceive."  *See* Compl. at ¶¶ 74-81.  Thus, the Fowlers' fraud claim

should also be dismissed due to their failure to plead the required elements.

       4.       *The Fowlers' CCPA claim fails because the Fowlers cannot meet the CCPA's public impact requirement.*

The Fowlers' CCPA claim fails as a matter of law for the additional reason that they have

not alleged that BANA engaged in a deceptive practice that significantly impacted the public.

An essential element of a CCPA claim is that the deceptive trade practice "significantly

impacts the public as actual or potential consumers of the defendant's goods, services, or

property." *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146-47 (Colo. 2003). "[A] CCPA claim is not actionable if it pertains to private conduct that does not affect the public." *Van Rees v. Unleaded Software, Inc.*, 2013 COA 164 ¶ 39 (Colo. App. December 5, 2013), *cert. granted*, No. 14SC66, 2014 WL 5473799 (Colo. Oct. 14, 2014). To determine whether conduct significantly impacts the public, the court must consider the following factors: "(1) the number of consumers directly affected by the challenged practice, (2) the relative sophistication and bargaining power of the consumers affected by the challenged practice, and (3) evidence that the challenged practice has previously impacted other consumers or has the significant potential to do so in the future." *Rhino Linings,* 62 P.3d at 149.

Here, the Fowlers have not identified any deceptive trade practice committed by BANA, much less alleged that any supposed deceptive trade practice impacted other borrowers or is likely to do so in the future. The only so-called deceptive practice – allegedly failing to respond to the Fowlers' flood of mailings, and making a conditional offer to provide relocation assistance – was inherently directed to the Fowlers alone. *See* Compl. at ¶ 83. This is a private dispute and nothing more. *See Tara Woods Ltd. P'ship v. Fannie Mae*, 731 F. Supp. 2d 1103, 1123-24 (D. Colo. 2010) (dismissing CCPA claim where "no public interest is implicated by an allegation that the Defendants simply engaged in a private wrong as against only the Plaintiff"); *see also Van Rees,* 2013 COA 164 ¶ 43 (denying a CCPA claim as factually deficient where the "dispute pertains to a private contract between two sophisticated business entities. Van Rees does not allege any harm or potential harm to identifiable segments of the public; the only harm Van Rees alleges is his own economic loss").

The Fowlers' attempt to plead around this fact with a conclusory allegation, based on "belief and knowledge," that other consumers received the same conditional offer for relocation

assistance (Compl. at ¶ 84) does not alter the result.  *See Henson*, 935 F. Supp. 2d 1128, 1142

("Plaintiffs' suggestion, 'on information and belief,' that Bank of America and Castle Stawiarksi

'routinely pursue foreclosure actions without being a holder of an evidence of debt or posting a

bond,' is nothing more than a conclusory statement that falls short of the pleading requirements

enunciated in *Twombly* and *Iqbal*.").  The Fowlers' CCPA claim is clearly based on: (i) their own

misreading of BANA's conditional relocation assistance offer as some sort of promise that they

could "do nothing" and "owe nothing more on their mortgage"; and (ii) BANA's alleged failure

to respond to the Fowlers' own repetitive, duplicative, serial mailings.  Compl. at ¶ 83.  These

allegations are insufficient to show conduct that harmed or potentially harmed identifiable

segments of the public.  *Van Rees*, 2013 COA 164 ¶ 43.  This claim should be dismissed.

> 5.    *The Fowlers' Outrageous Conduct claim fails as a matter of law.*

The Fowlers' outrageous conduct claim fails for the additional reason that the conduct

alleged in support of this claim is not extreme or outrageous as a matter of law.  Before allowing

a claim for outrageous conduct to proceed, "the trial court must initially rule on the threshold

issue of whether the plaintiff's allegations of outrageous conduct are sufficiently outrageous as a

matter of law."  *Coors Brewing Co. v. Floyd,*  978 P.2d at 663, 665 (Colo. 1999).  In making this

determination, the court must determine whether reasonable persons could differ on the question

of whether the allegations are sufficiently outrageous as a matter of law.  *Id.* at 666 (quoting

*Culpepper v. Pearl St. Bldg., Inc.*, 877 P.2d 877, 883 (Colo. 1994)).  The level of outrageousness

required for conduct to create liability for intentional infliction of emotional distress is

"extremely high" and "liability has been found only where the conduct has been so outrageous in

character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be

regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting *Rugg v. McCarty*, 476 P.2d 753, 756 (Colo. 1970)).

Here, the Fowlers base their outrageous conduct claim on allegations that BANA: (1) failed to properly respond to their alleged RESPA inquiries; (2) failed to enroll them in a short sale program in which they would owe nothing more on the property if they simply "did nothing" – a complete misinterpretation of the May 2012 Letter; and (3) aggressively engaged in unspecified collection activities, about which the Complaint provides no factual description or context whatsoever – aside from admitting that the Fowlers were, indeed, in default for more than five years.  Compl. at ¶¶ 93-94, 96.  The conduct described by the Fowlers is not "beyond all possible bounds of decency, atrocious, or utterly intolerable in a civilized society." *See Coors Brewing Co.,* 978 P.2d at 665.  Indeed, the purported misconduct recited by the Fowlers is less egregious than the conduct that Colorado courts have routinely found insufficient as a matter of law to support a claim for outrageous conduct.  *See, e.g.*, *Dalton*, 828 F. Supp. 2d at 1252 (in the home loan servicing context, alleged verbal abuse from defendant's representatives, provision of misleading information regarding funding from defendant, threats of foreclosure, and coercion of short sale are not outrageous as a matter of law); *Hewitt*, 931 P.2d at 456, 459 (in home loan context, bank's reneging on promises not to foreclose in exchange for loan payment, where bank commenced foreclosure proceedings the following day, not outrageous); *Price v. Fed. Exp. Corp.,* 660 F. Supp. 1388, 1390 (D. Colo. 1987) (alleged harassment, investigation of misconduct, forced lateral transfer, and taking actions to preclude plaintiff from obtaining employment not outrageous); *Coors Brewing Co.*, 978 P.2d at 666 (alleged employment termination to cover-up defendants' own illegal activities not outrageous); *Culpepper*, 877 P.2d

at 883 (alleged mistaken cremation of son's body not outrageous).  This claim fails as a matter of law and should be dismissed.

## CONCLUSION

WHEREFORE, for the reasons set forth above, Defendants pray that the Court dismiss the Fowlers' Complaint with prejudice and for such other and further relief as the Court deems necessary under the premises.

Dated:  October 26, 2015.

Respectfully submitted,

*s/ M. Adam Lewis*
M. Adam Lewis, #42585
BRYAN CAVE LLP
1700 Lincoln Street, Suite 4100
Denver, CO 80203-4541
Telephone:  303-861-7000
Facsimile:  303-866-0200
Email: adam.lewis@bryancave.com

Attorneys for Defendants

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on October 26, 2015, a true and correct copy of the

foregoing **MOTION TO DISMISS** was e-filed and served via CM/ECF or U.S. Mail on the

following:

Timothy A. Bullock, Esq.
Bullock Law L.L.C.
827 Good Hope Drive
Castle Rock, CO 80108
bullocklaw@gmail.com


*s/ Alicia Berry*
Alicia Berry, Secretary
Bryan Cave LLP